IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

MATTIE MAE GRANTT                                                                          PLAINTIFF

vs.                                        Civil No. 1:15-cv-01069

CAROLYN W. COLVIN                                                                      DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

Mattie Mae Grantt ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social

Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of

the Commissioner of the Social Security Administration ("SSA") denying her applications for a

period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income

("SSI") under Titles II and XVI of the Act.

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all

proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and

conducting all post-judgment proceedings. (ECF No. 7).[1]  Pursuant to this authority, the Court issues

this memorandum opinion and orders the entry of a final judgment in this matter.

1.    **Background:**

Plaintiff protectively filed her disability applications for DIB on November 28, 2012, and for

SSI on January 10, 2013.  (Tr. 7).  In her applications, Plaintiff alleges being disabled due to

migraine headaches, diabetes mellitus, high blood pressure, carpel tunnel syndrome, and H. Pylori

virus.  (Tr. 215).  Plaintiff alleges an onset date of November 16, 2012.  (Tr. 211).  These

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ___."  The transcript pages
for this case are referenced by the designation "Tr."

applications were denied initially and again upon reconsideration.  (Tr. 114, 125).

Thereafter, Plaintiff requested an administrative hearing on her denied applications, and this hearing request was granted.  (Tr. 130, 140).  Plaintiff's administrative hearing was held on February 10, 2014 in El Dorado, Arkansas.  (Tr. 27-63).  Plaintiff was present and was represented by James Reid.  *Id.*  Plaintiff and Vocational Expert ("VE") Donna Humphries testified at this hearing.  *Id.* At this hearing, Plaintiff testified she was sixty (60) years old, which is defined as a "person of advanced age" under 20 C.F.R. § 416.963(e) (SSI) and 20 C.F.R. § 404.1563(e) (DIB).  (Tr. 32). As for her level of education, Plaintiff reported she completed four (4) or more years of college and is a Licensed Practical Nurse (LPN).  (Tr. 216).

After this hearing, on August 25, 2014, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI.  (Tr. 7-21).  In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2017.  (Tr. 12, Finding 1).  The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since November 16, 2012, her alleged onset date.  (Tr. 12, Finding 2).  The ALJ determined Plaintiff had the following severe impairments: diabetes mellitus, lumbar spinal stenosis, peripheral neuropathy, carpal tunnel syndrome, migraine headaches, and hypertension.  (Tr. 12-13, Finding 3).  Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings").  (Tr. 14-15, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC").  (Tr. 15-19, Finding 5).  First, the ALJ evaluated Plaintiff's subjective complaints and found her claimed limitations were not entirely credible.  *Id.*  Second, the ALJ determined Plaintiff retained the RFC

to perform:

> sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except that she requires being able to sit for six hours, with an opportunity to stand every one or two hours in an eight-hour workday. The claimant can occasionally climb, stoop, crouch, kneel, or crawl, and can perform frequent reaching and handling.

*Id*.

The ALJ then evaluated Plaintiff's Past Relevant Work ("PRW"). (Tr. 19, Finding 6). The VE testified at the administrative hearing regarding this issue. (Tr. 44-45). Based upon the testimony and considering Plaintiff's RFC, the ALJ determined Plaintiff was unable to perform any past relevant work. (Tr. 19, Finding 6). Based on Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy, such as a triage or telephonic nurse, which has a DOT code of 205.162-010, and is sedentary work with an SVP of seven (7) with one hundred seventy-five thousand (175,000) jobs in the national economy, and one thousand three hundred (1,300) jobs in Arkansas. Because jobs exist in significant numbers in the national economy which Plaintiff can perform, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from November 16, 2012 through the date of his decision. (Tr. 21, Finding 11).

Thereafter, September 5, 2014, Plaintiff requested a review by the Appeals Council. (Tr. 5-6). The Appeals Council denied this request on September 9, 2015. (Tr. 1-4). On November 4, 2015, Plaintiff filed the present appeal with this Court. (ECF No. 1). The Parties consented to the jurisdiction of this Court on November 19, 2015. (ECF No. 7). This case is now ready for decision.

2.   **Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *see* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *see Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently.  *see Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).  If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *see Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity.  *see Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998);  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382(3)(c).  A plaintiff must show his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months.  *see* 42 U.S.C. § 423(d)(1)(A).

4

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove there are other jobs in the national economy the claimant can perform. *see Cox*, 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *see* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3.    Discussion:**

In her appeal brief, Plaintiff raises three arguments for reversal: (1) the ALJ erred in failing to evaluate Plaintiff's severe migraine headaches through each step of the sequential evaluation process; (2) the ALJ's RFC determination failed to consider Plaintiff's alleged mental impairments; and (3) The ALJ failed to properly identify jobs existing in significant numbers in the national economy. (ECF No. 10 pgs. 1-17).

The ALJ determined Plaintiff's migraine headaches were a severe impairment at step two of the sequential evaluation process. Plaintiff's first argument, that the ALJ erred in failing to evaluate Plaintiff's severe migraine headaches through each step of the sequential evaluation process, must be separated into two (2) parts: First, the ALJ's consideration of Plaintiff's severe migraine

5

headaches at step three (3) of the sequential evaluation process; and, the ALJ's RFC determination. Plaintiff's argument that the ALJ failed to evaluate Plaintiff's severe migraine headaches through steps four (4) and five (5) of the sequential evaluation process is merely an objection to the ALJ's RFC determination and is addressed herein as such. Plaintiff's second argument, that the ALJ's RFC determination failed to consider Plaintiff's alleged mental impairments, is most appropriately and efficiently addressed parallel to considering Plaintiff's argument that the ALJ's RFC determination did not take into account Plaintiff's migraine headaches.

## A. __Step Three Analysis:__

The ALJ properly considered Plaintiff's severe migraine headaches at step three (3) of the sequential evaluation process. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1152 (8th Cir. 2004) (internal quotations and citation omitted). Where the claimant suffers from an unlisted impairment, the ALJ must compare the claimant's impairment with an analogous listed impairment. 20 C.F.R. §§ 404.1526, 416.926. Furthermore, the question is whether the ALJ "consider[ed] evidence of a listed impairment and concluded that there was no showing on th[e] record that the claimant's impairments . . . m[et] or are equivalent to any of the listed impairments." *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006) (internal quotations omitted). The ALJ considered both Plaintiff's neuropathy and migraines under section eleven (11) of the listings. While it is preferable an ALJ address a specific listing, the failure to do so is not reversible error if the record supports the overall conclusion. *see Pepper ex rel. Gardner v. Barnhart*, 342 F.3d, 853, 855 (8th Cir. 2004), *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *see also Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) ("There is no error when an ALJ fails to explain why an

impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record.").   The ALJ determined, "[h]ere, where the claimant is still capable of organized motor function and speech, these listings are not met by the claimant's neuropathy or migraines."  (Tr. 15).  The ALJ's conclusion, that Plaintiff's migraines do not meet or medically equal the severity of one of the listed impairments, is supported by substantial evidence on the record as a whole.

**B.**    **Physical RFC:**

RFC is the most a person can do despite that person's limitations.  20 C.F.R. §§ 404.1545, 416.945.  A disability claimant has the burden of establishing his or her RFC.  *Vossen v. Astrue*, 612 F. 3d 1011, 1016 (8th Cir. 2010).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The United States Court of Appeals for the Eighth Circuit has held a "claimant's residual functional capacity is a medical question."  *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Plaintiff has a long history of suffering from migraine headaches for which she has received treatment since at least 1998.  (Tr. 301).  Plaintiff reported to the SSA migraine pain around her temples and on the side of her head which caused nausea, vomiting, and interfered with her ability

to sleep and walk.  (Tr. 232-233, 243-247).  She also reported her medications cause drowsiness. (Tr. 232-242, 267).  In addition to taking medication, Plaintiff stated her symptoms improve when she can be in a quiet, darkened room, and physically and mentally relax.  (Tr. 232-233).  The ALJ found Plaintiff's statements were not credible "concerning the intensity, persistence, and limiting effects of these symptoms."  (Tr. 176).

Plaintiff has had numerous visits with doctors regarding her migraine headaches.  Plaintiff visited Dr. Richard Plant on March 21, 2012, complaining of a migraine headache.  (Tr. 357).  Dr. Plant attributed Plaintiff's headache to an abscessed tooth and prescribed pain medication and antibiotics.  *Id.*  Plaintiff returned to Dr. Plant the following day and stated her headache did not improve with the prescribed medication.  (Tr. 356).  Dr. Plant tried a different medication for immediate relief and recommended alternative medications if Plaintiff needed something different. *Id.*  On May 15, 2012, Plaintiff visited the hospital with a headache and facial pain on the right side of her face and was diagnosed with a viral infection and hypertension.  (Tr. 311-326, 459-464).

Dr. Jerry Reifeiss noted on August 31, 2012, Plaintiff reported having some headaches but her medication calms them down.  (Tr. 351).  During a follow up visit  on September 21, 2012, Dr. Reifeiss reported Plaintiff's history of migraines was controlled by medication.  (Tr. 348).  On November 28, 2012, Plaintiff visited with Dr. Reifeiss for a routine follow up regarding her diabetes, hypertension, and depression diagnoses and reported she was doing well.  (Tr. 346).  Dr. Reifeiss reported Plaintiff was "stable in all regards."  *Id.*  Plaintiff told Dr. Reifeiss on February 4, 2013, her migraines were getting worse, she was having difficulty with her memory, and she quit working on November 16, 2012 because of her headaches.  (Tr. 210, 428).

On March 13, 2013, Plaintiff reported to Dr. Cathryn Gonzales that Plaintiff suffered from

approximately two migraines per month.  (Tr. 425).  Dr. Gonzales noted Plaintiff's headaches were "not in as good of control" as the doctor preferred, and adjusted Plaintiff's medication accordingly. *Id.*

First, the record does not contain much, if any, diagnostic testing.  The record mostly contains Plaintiff's own subjective reports of her pain, her inability to work, and her worsening symptoms. During one episode, Plaintiff's headaches were attributed to an abscessed tooth and corresponding infection.  (Tr. 356).  Another episode was attributed to a viral infection and Plaintiff's hypertension diagnosis.  (Tr. 311-326, 459-464).  The record indicates Plaintiff suffered migraine headaches during many of her working years which were adequately controlled by medication.  While Plaintiff, in February of 2013, reported to Dr. Reifeiss her headaches worsened to the point she could no longer work, she reported to Dr. Gonzales one month later she suffered approximately two migraines per month.  (Tr. 425, 428).

Although Plaintiff quit her job on November 16, 2012, because of her headaches, the record contains no objective evidence concerning the intensity, persistence, and limiting effects of her headache symptoms aside from Plaintiff's own subjective opinion.  Moreover, twelve (12) days after Plaintiff allegedly quit her job because of her headaches, she told Dr. Reifeiss she was doing well and he reported Plaintiff was "stable in all regards." (Tr. 210, 346).  Further, despite Plaintiff's claim her impairments prevent her from working, she completed the year 2011 with one hundred twenty (120) hours of unused annual leave and just over thirty-three (33) hours of unused sick leave, and completed the year 2012 with one hundred twenty (120) hours of unused annual leave and ten (10) hours of unused sick leave which were paid out to her when she quit working.  (Tr. 299).  Dr. Gonzales adjusted Plaintiff's medication during her March 13, 2013 visit to better control Plaintiff's

9

migraine headaches and the record contains no further record of Plaintiff seeking treatment for her migraine headaches between the date her medications were adjusted, March 13, 2013, and the date of the ALJ's unfavorable decision on August 25, 2014.  (Tr. 425).  Accordingly, I find the ALJ's RFC determination, with regard to Plaintiff's migraine headaches, is supported by substantial evidence on the record.

**C.**     **Mental RFC:**

Plaintiff had been taking prescription medications to treat her symptoms of depression since at least October 12, 2008.  (Tr. 439).  The record otherwise shows no further treatment of Plaintiff's depression diagnosis.  The record does not contain any type of diagnostic testing and the Plaintiff never sought out and was never recommended the service of a mental health specialist.  On August 28, 2012, Dr. Reifeiss reported Plaintiff's depressive symptoms as mild and well controlled with medication, but the record as a whole with regard to Plaintiff's depression symptoms, otherwise documents only Plaintiff's prescription history.  (Tr. 350).

When applying the special technique in Plaintiff's case during the sequential analysis the ALJ determined Plaintiff had only mild limitation in two of the broad functional areas. (Tr. 14).  The ALJ made his determination based largely on Plaintiff's own subjective reports but specifically noted Plaintiff's mild limitation in the area of social functioning was "likely due to migraine symptoms." Regarding Plaintiff's mild limitation in the area of concentration, persistence, or pace, the ALJ determined, "[l]ike social functioning, it is unclear from the record how much of the claimant's limitations in this area are from her physical impairments and symptoms, as opposed to mental impairments. Given the claimant's treatment, it is reasonable to assume that most of her limitations come from her pain and other physical symptoms."  (Tr. 14).

10

The lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment. *see Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007). I also note a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *see Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990); *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (fact claimant did not allege depression on benefits application is significant even if evidence of depression was later developed.). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir.2012) (quoting *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir.2010)). Although Plaintiff was diagnosed with depression and received medication for her symptoms, the record does not indicate anything other than her depression symptoms did not require the services of a mental health specialist to manage and was controlled by medication. Accordingly, I find the ALJ's RFC determination, with regard to Plaintiff's depression, is supported by substantial evidence on the record.

**D.** **Step Five Analysis:**

Plaintiff argues the hypothetical presented to the ALJ did not account for Plaintiff's migraine headaches and depression. "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). The ALJ's hypothetical question included all the limitations found to exist by the ALJ and set forth in the ALJ's RFC determination. *Id.* Based on my previous conclusion that the ALJ's RFC findings are supported by substantial evidence, I hold the hypothetical question was

11

proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits. *Id.*, *see also Lacroix*, 465 F.3d at 889.

Lastly, Plaintiff argues the ALJ failed to meet his burden of proving Plaintiff had acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. Plaintiff specifically argues the ALJ erred in determining Plaintiff's skills from past jobs were transferable to any other jobs or the jobs he named in his determination. In the Plaintiff's case, Plaintiff's skills are transferable "if the sedentary work is so similar to [her] previous work that [she] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4).

Plaintiff reported on her Work History Report she worked as a nurse, or at least in the nursing field, since at least 1991. (Tr. 224-231). For each of her previous jobs Plaintiff reported using machines, tools, or equipment, using technical knowledge or skills, and performing duties like writing or completing reports. *Id.* Plaintiff further reported having answered telephone calls, directed patients to the emergency room, and provided non-emergency medical advice as an info nurse at John Peter Smith Hospital in Fort Worth, Texas. (Tr. 229). At the hearing on this matter, the ALJ asked the VE if Plaintiff acquired any skills during her past relevant work experience which she could apply to sedentary work. (Tr. 44). The VE testified the Plaintiff's transferrable skills included application of medical knowledge, scheduling, interviewing, professional communication, organization, and some assessment and record-keeping. (Tr. 44-45). The ALJ clarified the VE's response and asked:

> And this would be a person who would be simply sitting at the phone or sitting at a desk and not actually doing any medical examinations but simply answering

questions, either on the phone or at the desk and then making a quick decision based
on her medical knowledge?

(Tr. 45).  The VE answered in the affirmative and stated Plaintiff's previous employment at John

Peter Smith Hospital in Fort Worth, Texas, as an info nurse, was similar.  *Id.*  The VE testified,

based on the ALJ's hypothetical scenarios, a representative person could perform the duties of a

triage or telephonic nurse, DOT Code 205.162-010, which the VE testified is sedentary work with

an SVP of seven (7) with one hundred seventy-five thousand (175,000) jobs in the national economy,

and one thousand three hundred (1,300) jobs in Arkansas.  Based on the record as a whole, the ALJ's

finding is based on substantial evidence on the record and comports with the requirements of the

acts.

**4.      Conclusion:**

Based on the foregoing, the undersigned finds the decision of the ALJ, denying benefits to

Plaintiff, is supported by substantial evidence and should be affirmed.  A judgment incorporating

these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 8th day of August 2016.**

/s/  Barry A. Bryant
HON. BARRY A. BRYANT
U. S. MAGISTRATE JUDGE